**FOR PUBLICATION**

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS & ST. JOHN**

| | |
|---|---|
| **CATHERINE L. RASMUSSEN,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ALICIA DALMIDA,**<br><br>**Defendant.** | **Civil No. 2006-70** |

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
St. Thomas, U.S.V.I.
*For the plaintiff.*

**Pedro K. Williams, Esq.**
St. Thomas, U.S.V.I.
*For the defendant.*

**MEMORANDUM OPINION**

**GÓMEZ, C.J.**

Before the Court is the motion of the plaintiff, Catherine L. Rasmussen ("Rasmussen"), for partial summary judgment against the defendant, Alicia Dalmida ("Dalmida").

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 7, 2005, Dalmida agreed to purchase Rasmussen's daycare business, "A Garden of Children Learning Center," located on St. Thomas, U.S. Virgin Islands. Dalmida agreed to pay Rasmussen the contract price of $47,000 in two unequal installments. The first payment of $10,000 was due on August 31,

2005. The second payment of $37,000 was due on October 31, 2005.

On October 3, 2005, Dalmida notified Rasmussen that she did not have adequate funds to cover the first installment. The parties revised their agreement. Under the revised agreement, Dalmida agreed to make monthly payments of two thousand dollars no later than the fifteenth of each month, beginning on October 15, 2005. Monthly payments were to be increased to three thousand dollars starting on July 15, 2006. Any missed payments would result in a late fee of $50 per day.

Dalmida subsequently fell into arrears on her payments under the revised agreement. On February 8, 2006, Rasmussen demanded that Dalmida make good on the arrearage by February 18, 2006. That demand was not met. On February 28, 2006, Dalmida informed Rasmussen by letter that she could not keep pace with the payment schedule and agreed to relinquish the daycare center to Rasmussen. On March 9, 2006, Rasmussen demanded that Dalmida surrender the daycare center no later than April 1, 2006. Dalmida did not comply with that demand.

On April 26, 2006, Rasmussen commenced this six-count lawsuit with the filing of a verified complaint and supporting documentation. Rasmussen asserts the following causes of action: (1) breach of contract; (2) unjust enrichment; (3) breach of the duty of good faith and fair dealing; (4) misrepresentation and fraudulent inducement; (5) prima facie tort; and (6) intentional

infliction of emotional distress.

Dalmida timely filed an answer in which she denied having entered into a valid agreement with Rasmussen. Dalmida also asserted a counterclaim, alleging that Rasmussen improperly retained grants from the Virgin Islands Department of Human Services and failed to pay the daycare center's tax bills and other obligations.

On January 19, 2007, Dalmida returned the daycare center to Rasmussen. On April 24, 2007, Rasmussen sold the daycare center to a third party for $35,500.

Rasmussen seeks summary judgment on Count One's breach of contract claim. Rasmussen seeks a judgment on that claim in the amount of $17,493.50. Dalmida has filed an opposition with manifold deficiencies.[1] Rasmussen has filed a reply.

---

[1] The Local Rules of Civil Procedure require a party opposing a summary judgment motion to file its opposition within twenty days of the filing of the motion. LRCi 56.1(b). That deadline may be extended pursuant to the parties' negotiated extension or by court order. *See* LRCi 56.1(c). Rasmussen filed her motion on September 16, 2008. Under normal circumstances, Dalmida's opposition was due by October 6, 2008. Dalmida did not file her opposition until November 21, 2008. The record does not reflect that the parties negotiated an extension or that the Court granted Dalmida additional time. As such, Dalmida's opposition is untimely.

The Local Rules also provide:

> The respondent must address the facts upon which the movant has relied . . ., using the corresponding serial numbering and either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts

---

> for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed.

LRCi 56.1(b).

Dalmida's opposition fails in every respect to conform to the above rule.

Finally, Dalmida's opposition does not even purport to address, much less rebut, Rasmussen's evidence. Nor has Dalmida submitted any evidence of her own for the Court's review. *See* LRCi 56.1(d) ("Failure to respond to a movant's statement of material facts, or a respondent's statement of additional facts, as provided by these Rules may result in a finding that the asserted facts are not disputed for the purposes of summary judgment.").

It appears that what Dalmida labels as an opposition is in fact a response to the Court's October 27, 2008, Order requiring the parties to brief the applicability of the gist of the action doctrine. Significantly, that Order was entered after the responsive period for Rasmussen's motion had lapsed. Furthermore, nothing in that Order suggests that Dalmida is excused from opposing Rasmussen's motion.

showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

## III. ANALYSIS

Rasmussen contends that she is entitled to summary judgment on her breach of contract claim.[2]

---

[2] It is axiomatic that the federal courts must satisfy themselves of their jurisdiction. *See Carlough v. Amchem Prods.*, 10 F.3d 189, 201 (3d Cir. 1993). Here, the complaint alleges jurisdiction under 28 U.S.C. § 1332(a), which confers original jurisdiction in the district courts over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]" *Id.* "As a general rule, the jurisdictional amount is determined from the good faith allegations appearing on the face of the complaint." *In re LifeUSA Holding*, 242 F.3d 136, 143 (3d Cir. 2001) (citation

To establish a breach of contract claim under Virgin Islands law, a plaintiff is required to prove that there was (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages. *Galt Capital, LLP v. Seykota*, Civ. Nos. 2002-63 and 2002-134, 2007 U.S. Dist. LEXIS 92955, at *10 (D.V.I. Dec. 14, 2007) (citing *Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F. Supp. 279, 282 (D.V.I. App. Div. 1997)).

In support of her motion, Rasmussen reiterates the facts set forth in her verified complaint.[3] Attached to the verified complaint are the parties' initial agreement, their revised agreement and correspondence between their respective counsels.

---

omitted). "Accordingly, the question whether a plaintiff's claims pass the 'legal certainty' standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims." *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997). "The court should not consider in its jurisdictional inquiry the legal sufficiency of those claims or whether the legal theory advanced by the plaintiffs is probably unsound; rather, a court can dismiss the case only if there is a legal certainty that the plaintiff cannot recover more than [the jurisdictional minimum]." *Id.* Rasmussen alleges that the amount-in-controversy of her aggregated breach of contract and tort claims exceeds $75,000. The parties are also diverse. The Court therefore has jurisdiction to consider Rasmussen's claims.

[3] For summary judgment purposes, a verified complaint may be treated as the equivalent of an affidavit. *See*, *e.g.*, *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating a verified complaint as an affidavit in reviewing a ruling on a summary judgment motion); *see also Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) ("[T]he allegations in [a] verified complaint may be considered competent evidence insofar as they comply with the requirements of Federal Rule of Civil Procedure 56(e)."). Rasmussen's verified complaint satisfies the requirements of Rule 56(e).

The agreements that Rasmussen has submitted are signed by both parties, thus manifesting the parties' mutual assent. *See, e.g.*, *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 223 (3d Cir. 2008) (concluding that a litigant's signature manifested his assent to an agreement); *Thomas James Assocs. v. Jameson*, 102 F.3d 60, 65 n.2 (2d Cir. 1996) (similar). They are also supported by consideration on both sides. *See*, *e.g.*, *Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (noting the parties' "valid agreement supported by consideration"); *see also Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 299 (3d Cir. 1986) (noting that consideration is a required element of contract formation). Based on this evidence, the Court concludes that Rasmussen and Dalmida entered into a valid, legally binding agreement.

The parties' agreement imposes a duty on Dalmida to pay Rasmussen $47,000 in several installments. Dalmida undisputedly failed to fulfil that duty. Given Dalmida's breach, the Court must determine the proper measure of damages.[4]

---

[4] Where, as here, "the moving party makes a case for summary judgment, the party opposing the motion has an *affirmative duty to set forth specific facts* showing there is a genuine issue for trial." *United Transp. Union v. Conemaugh & B. L. R. Co.*, 894 F.2d 623, 628 (3d Cir. 1990) (emphasis supplied; quotation marks and citation omitted). Here, Dalmida has wholly failed to meet that burden. Her opposition, to the extent it can be construed as such, addresses none of the facts set forth in Rasmussen's moving papers and is unaccompanied by any evidence whatever.

"The preferred basis of contract damages seeks to protect an injured party's 'expectation interest' –– that is, the interest in having the benefit of the bargain –– and accordingly awards damages designed to place the aggrieved in as good a position as would have occurred had the contract been performed." *Atacs Corp. v. Trans World Communs.*, 155 F.3d 659, 669 (3d Cir. 1998) (citation omitted); *see also Hirsch v. Enright Refining Co.*, 751 F.2d 628, 634 (3d Cir. 1984). Such "damages are measured by the losses caused and gains prevented by defendant's breach, to the extent they are in excess of any savings made possible by nonperformance." *American Air Filter Co. v. McNichol*, 527 F.2d 1297, 1299 (3d Cir. 1975) (quotation marks and citations omitted).

The Restatement (Second) of Contracts[5] articulates the computation of such damages:

> [T]he injured party has a right to damages based on his expectation interest as measured by
>
> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
>
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
>
> (c) any cost or other loss that he has avoided by not having to perform.

---

[5] Under Virgin Islands law, "the restatements of the law approved . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." V.I. CODE ANN. tit. 1, § 4.

Restatement (Second) of Contracts § 347 (1981).

Here, Rasmussen expected to receive $47,000, the contract price. In the end, she received only $5,200 from Dalmida. Thus, to make Rasmussen "whole" again would require an award of $41,800. However, following Dalmida's breach, Rasmussen sold the daycare center for $35,500. Because Rasmussen mitigated her damages, an award of $6,300 would restore her to the position in which she would have been had Dalmida not breached. Accordingly, the Court will enter judgment in favor of Rasmussen in that amount.

In her motion, Rasmussen also requests an award of $5,864. She claims that when Dalmida relinquished the daycare center, several items were missing from inside. Rasmussen has attached to her moving papers an affidavit attesting to that assertion. That affidavit avers that Dalmida "failed to return items totaling $5,864.00 that belonged to me. Dalmida kept all profits and income for that time period." (Rasmussen Aff. ¶ 4, July 28, 2008.)[6] Neither the verified complaint nor the parties' agreement charges Dalmida with responsibility for inventory in the daycare center. Nor has Rasmussen proffered any other competent evidence showing that the parties contemplated a sale

---

[6] Rasmussen has attached to her motion an itemized list of these assets, the combined value of which is $5,864.

of inventory. Rather, the plain language of the parties' agreement demonstrates that the parties contracted exclusively for the sale of the daycare center itself. As such, Rasmussen has not met her burden of showing that she is entitled to damages for items allegedly missing from the daycare center. Accordingly, the motion will be denied to the extent it seeks reimbursement for those items.

Rasmussen also seeks the imposition of prejudgment interest, beginning on February 28, 2006. Because the Court's jurisdiction over this matter is predicated on diversity of citizenship, *see* 28 U.S.C. § 1332, Virgin Islands law governs whether prejudgment interest is available, *see Zippertubing Co. v. Teleflex Inc.*, 757 F.2d 1401, 1414 (3d Cir. 1985).

In the Virgin Islands, an award of prejudgment interest is permitted on "all monies which have become due." V.I. CODE ANN. tit. 11, § 951(a)(1). An award of prejudgment interest is authorized only where the amount due is in money and therefore easily ascertainable. *Antilles Ins. v. James*, Civ. App. No. 1992-27, 1994 U.S. Dist. LEXIS 9623, at *48 (D.V.I. July 6, 1994) (citation and quotation omitted). "[T]he right to interest upon money owing upon contract is a legal right which begins at the time payment is withheld after it has been the duty of the debtor to make such payment." *Brisbin v. Superior Valve Co.*, 398 F.3d 279, 293 (3d Cir. 2005) (stating Pennsylvania law; alteration,

quotation marks and citation omitted).

"As a general rule, prejudgment interest is to be awarded when . . . the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due." *Anthuis v. Colt Industries Operating Corp.*, 971 F.2d 999, 1010 (3d Cir. 1992). A court may exercise its discretion to award prejudgment interest "upon considerations of fairness and prejudgment interest may be denied when its exaction would be inequitable." *Thabault v. Chait*, 541 F.3d 512, 534 (3d Cir. 2008).

The amount due in this matter is easily ascertainable from the parties' revised agreement. That agreement obligates Dalmida to pay Rasmussen monthly installments of $2,000 from October 15, 2005 through June 15, 2006, and $3,000 from July 15, 2006 onward.[7] *See* Restatement (Second) of Contracts § 354 cmt. c (1981) ("The sum due is sufficiently definite if it is ascertainable from the terms of the contract . . . ."). Dalmida repudiated the contract on February 28, 2006. That date is therefore the start date for the computation of prejudgment

---

[7] The agreement also provides that if Dalmida has not paid the full contract price by July 15, 2007, installments will increase to $3,450. (*See* Verified Compl., Exh. B at 1.) That clause is not triggered because Rasmussen sold the daycare center to a third party on April 14, 2007.

interest.[8] *See, e.g.*, *Brisbin*, 398 F.3d at 294 (noting that a party is entitled to prejudgment interest *"beginning on the date of contract repudiation"*) (emphasis supplied; citing *Fernandez v. Levin*, 548 A.2d 1191, 1193 (Pa. 1988) (concluding a party is entitled to prejudgment interest from the date the right to payment accrues)). As of February 28, 2006, Dalmida owed Rasmussen $4,800.[9] On April 24, 2007, Rasmussen sold the daycare center to a third party for $35,500. The Court therefore will award Rasmussen prejudgment interest on $4,800 from February 28, 2006 until April 24, 2007. The Court will also award Rasmussen prejudgment interest on $1,500[10] from February 28, 2006 until

---

[8] Rasmussen seeks prejudgment interest on $41,800 from February 28, 2006 until entry of judgment. Granting that request, however, would result in a windfall for Rasmussen because she was not yet owed the full $47,000 at the time the contract was repudiated. Moreover, she mitigated her damages by selling the daycare center to a third party. Given these circumstances, Rasmussen's calculation of prejudgment interest is inappropriate. *See, e.g.*, *Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1442 (9th Cir. 1996) (holding that "the district court also properly considered whether prejudgment interest would amount to a windfall recovery").

[9] From October 15, 2005 through February 15, 2006, Dalmida owed Rasmussen five equal payments of $2,000, for a total of $10,000. The contract was repudiated on February 28, 2006. By that date, Dalmida had paid Rasmussen $5,200. Thus, Rasmussen was owed $4,800 at the time of repudiation.

[10] $1,500 represents the difference between $6,300, the amount of the Court's judgment in favor of Rasmussen, less $4,800, the amount Dalmida owed Rasmussen as of February 28, 2006.

April 24, 2007.[11]

## IV. CONCLUSION

For the reasons given above, the Court finds that there are no material facts in dispute and that Rasmussen is entitled to judgment as a matter of law on her breach of contract claim. Accordingly, the Court will enter judgment for Rasumussen in the amount of $6,300, plus prejudgment interest, as outlined above. Post-judgment interest will accrue at the statutory rate. An appropriate judgment follows.



S_____________________
**CURTIS V. GÓMEZ**
**Chief Judge**

---

[11] The Restatement provides a useful illustration to guide the determination of prejudgment interest on an installment contract:

> A contracts to work for B at a weekly salary of $2,000. B wrongfully discharges A ten weeks before the contract ends and refuses to pay A anything for the four weeks preceding the discharge. By reasonable efforts, A can find similar work paying $ 1,500 a week for the last ten weeks. A sues B and recovers $ 2,000 for each of the first four weeks and $ 500 for each of the last ten, or $ 13,000. A *is entitled to simple interest on each instalment at the legal rate from the date that it was payable*.

Restatement (Second) of Contracts § 354 cmt. c, illus. 7 (1981).